**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Maria Crimi Speth (012574)
mcs@jaburgwilk.com
Michael B. Dvoren (027386)
mbd@jaburgwilk.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kushgo LLC, a California limited liability company, | Case No. |
| Plaintiff, | |
| v. | **Complaint** |
| Segway, Inc., a Delaware corporation, | |
| Defendant. | |

Plaintiff Kushgo LLC ("Plaintiff") brings this complaint against Defendant Segway, Inc. ("Defendant") and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this action to stay the transfer of certain domain names to Defendant and to obtain a declaration of lawful use of the disputed domain names under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114 (2)(D), and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

**PARTIES**

2. Plaintiff is a limited liability company organized and existing under the laws of the State of California and having a principal place of business at 3940 Laurel Canyon Blvd., #376, Studio City, CA 91604. Plaintiff does business as SegAway Hoverboard.

3. Defendant is a corporation organized and existing under the laws of the State of Delaware having a principal place of business at 14 Technology Drive, Bedford, New Hampshire 03110.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction is proper under 28 U.S.C. § 1331, § 1338, §§ 2201-2202 and 15 U.S.C. § 1121 because this action involves a federal question arising under 15 U.S.C. § 1114(2)(D)(iv) and (v), and 15 U.S.C. § 1125(d).

5. This Court has personal jurisdiction over Defendant because Defendant expressly agreed to submit to the Court's personal jurisdiction. Specifically, Defendant filed a UDRP Complaint in which it agreed to submit to personal jurisdiction in "the location of the principal office of the concerned registrar" with respect to any challenge to the decision of the UDRP panel. The domain names that are the subject of this litigation, <segawayboard.com> and <segawayhoverboard.com>, are registered with GoDaddy.com, LLC, (the "Registrar"), a limited liability company having a principal place of business in Scottsdale, Arizona. Because the concerned Registrar's principal office is in the State of Arizona, Defendant has expressly consented to personal jurisdiction in the State of Arizona.

6. Venue is proper under 28 U.S.C. § 1391(b) and § 1391(c)(2).

## BACKGROUND

7. Plaintiff is an operating company which has been in the business of selling SegAway™ brand hoverboards since December, 2015.

8. Plaintiff sells its SegAway™ branded hoverboards on its website located at the domain name <segawayhoverboard.com>, and has been continuously selling its SegAway™ branded hoverboards on this domain since at least as early as December, 2015.

9. Plaintiff is the rightful owner and registrant of the domain name < segawayhoverboard.com >, as well as the domain name <segawayboard.com> (both domain names are referred herein, collectively, as the "Disputed Domain Names."). A

2

1 screenshot of Plaintiff's account holder profile with the Registrar is attached as **Exhibit A**. Plaintiff registered the Disputed Domain Names using GoDaddy's Domains by Proxy service, which is operated by Domains By Proxy, LLC of Scottsdale, Arizona.

10. Plaintiff lawfully registered the Disputed Domain Names in good faith, has legitimate interests with respect to the Disputed Domain Names, and has consistently acted in good faith in its use of the Disputed Domain Names.

11. The Disputed Domain Names incorporate the descriptive terms: Away, Hoverboard and Board. In fact, these terms are so descriptive that they are considered generic in relation to its dictionary meanings, none of which are identical to, confusingly similar to, nor dilutive of any mark belonging to Defendant.

12. Defendant markets and sells Segway® PT devices. The "PT" stands for "personal transporter" which is the supposedly generic term for Defendant's devices. However, through Defendant's improper use of the generic term, Defendant's SEGWAY mark has become the generic name for a two-wheeled gyroscope-based transportation device. Defendant now seeks to extend this generic mark to cover new devices which are fundamentally different from a traditional "Segway" device.

13. Plaintiff and Defendant offer distinct and differentiated products. For instance, unlike Plaintiff's products, Defendant's products have a center post on their boards, which make them a fundamentally different type of device, for a distinct market, negating any likelihood of confusion.

14. Defendant's SEGWAY mark creates a different commercial impression than Plaintiff's SEGAWAY mark or "SegAway," because of the emphasis on "AWAY" in the Mark, so the Disputed Domain Names are not confusingly similar.

15. Defendant's SEGWAY mark is merely a version of the common word "segue" and is pronounced the same. Defendant's modified use of "segue" is descriptive of Defendant's products and as such, narrows and limits Defendant's trademark rights in and to the SEGWAY mark.

16. Plaintiff's use of the Disputed Domain Names was not in bad faith.

3

17. Customers have come to associate Plaintiff's SEGAWAY mark with Plaintiff and its products, and therefore Plaintiff – not Defendant – owns the trademark rights to the SEGAWAY mark and the Disputed Domain Names.

18. Plaintiff is a legitimate going concern, and uses the Disputed Domain Names solely in connection with the *bona fide* offering of its SEGAWAY products, which are unrelated to the products offered by Defendant.

19. At no time has Plaintiff intended to divert consumers from Defendant's online location to a website that could harm the goodwill represented by Defendant's SEGWAY mark, either for commercial gain or with the intent to tarnish or disparage Defendant's SEGWAY mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website.  By contrast, Plaintiff's website, for example, bears no resemblance to Defendant's website, and provides clear, straightforward information regarding Plaintiff's identity and its products.

20. For at least these reasons, Plaintiff's use of the Disputed Domain Names is not in bad faith.

21. By and through proceedings under the Uniform Domain-Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN"), Case No. Case No. D2016-0725, Defendant caused the Sole Panelist to order the transfer of the Disputed Domain Names to Defendant through a decision dated June 23, 2016.  A copy of the Sole Panelist's decision is attached hereto as **Exhibit B**.

22. Accordingly, through this Complaint, Plaintiff asks for a declaration of lawful use of the Disputed Domain Names and injunctive relief prohibiting the transfer of the Disputed Domain Names to Defendant.

23. Pursuant to UDRP Policy Paragraph 4(k), the Registrar is required to allow 10 business days after the date the decision is transmitted to the parties. Paragraph 4(k) states:

> k. Availability of Court Proceedings. The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant

4

from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded. If an Administrative Panel decides that your domain name registration should be canceled or transferred, we will wait ten (10) business days (as observed in the location of our principal office) after we are informed by the applicable Provider of the Administrative Panel's decision before implementing that decision. We will then implement the decision unless we have received from you during that ten (10) business day period official documentation (such as a copy of a complaint, file-stamped by the clerk of the court) that you have commenced a lawsuit against the complainant in a jurisdiction to which the complainant has submitted under Paragraph 3(b)(xiii) of the Rules of Procedure. (In general, that jurisdiction is either the location of our principal office or of your address as shown in our Whois database. See Paragraphs 1 and 3(b)(xiii) of the Rules of Procedure for details.) If we receive such documentation within the ten (10) business day period, we will not implement the Administrative Panel's decision, and we will take no further action, until we receive (i) evidence satisfactory to us of a resolution between the parties; (ii) evidence satisfactory to us that your lawsuit has been dismissed or withdrawn; or (iii) a copy of an order from such court dismissing your lawsuit or ordering that you do not have the right to continue to use your domain name.

24. This Complaint is being filed and served by or before the last business day of the 10 day waiting period window after the date the Sole Panelist's decision was transmitted to the parties.

## COUNT I

## DECLARATARY JUDGEMENT UNDER

## THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

25. Plaintiff incorporates herein by reference each and every allegation in the preceding paragraphs of this Complaint as if set forth here in full.

26. Plaintiff's registration and use of the Disputed Domain Names does not violate federal trademark law and is wholly permissible under both federal and state trademark laws.

27. In connection with the registration of the Disputed Domain Names, Plaintiff had no bad faith intent to profit from Defendant's trademark rights for any product or service of Plaintiff, as contemplated by 15 U.S.C. § 1125(d)(1)(A)(i).

5

28.     Plaintiff has not used the Disputed Domain Names to engage in cybersquatting as prohibited by the ACPA, but instead has used the Disputed Domain Names in a bona fide business enterprise for the purpose of selling its products, which it has a lawful right to sell using the Disputed Domain Names.

29.     At the time of the registration, the Disputed Domain Names were not identical, confusingly similar to, or dilutive of any mark belonging to Defendant, as contemplated by 15 U.S.C. § 1125(d)(1)(A)(ii).

30.     A dispute exists between the parties concerning Plaintiff's right to register and use the Disputed Domain Names. As a consequence thereof, an actual and justiciable controversy exists between Plaintiff and Defendant.

31.     Plaintiff seeks a declaration that its registration and use of the Disputed Domain Names is lawful and that the Sole Panelist's June 23, 2016 decision is incorrect and contrary to law.

32.     Plaintiff will suffer a loss of reputation and good will and will be irreparably harmed if the Disputed Domain Names are transferred to Defendant.

**RELIEF REQUESTED**

Wherefore, Plaintiff requests that this Court enter judgment:

A.     Declaring that Plaintiff's registration and use of the domain names <segawayboard.com> and <segawayhoverboard.com> is not unlawful under the Anticybersquatting Consumer Protection Act;

B.     Declaring that Plaintiff's registration and use of the domain names <segawayboard.com> and <segawayhoverboard.com> is lawful;

C.     Declaring that Plaintiff is not required to transfer the domain names <segawayboard.com> and <segawayhoverboard.com> to Defendant;

6

D.   Declaring that any transfer by the Registrar before the 10 business day window after the Sole Panelist's decision was transmitted to the parties is null and void and any such transfer be immediately reversed;

E.   Entering a permanent injunction enjoining the Registrar from transferring the domain names <segawayboard.com> and <segawayhoverboard.com> to Defendant;

F.   Awarding Plaintiff its reasonable costs and attorneys' fees; and

G.   Awarding Plaintiff such other relief as the Court deems just and proper.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury on all issues so triable.

DATED this 8th day of July, 2016.

**Jaburg & Wilk, P.C.**

/s/ Michael B. Dvoren
Maria Crimi Speth
Michael B. Dvoren
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Plaintiff

7